IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JENNIFER MILLS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 18-323 |
| EXPERT FIRE AND SAFETY, LLC | § § | |
| Defendant. | § § | |

# PLAINTIFF JENNIFER MILLS' ORIGINAL COMPLAINT AND JURY DEMAND

## Introduction

Plaintiff Jennifer Mills files this action for disability discrimination under Title I of the Americans with Disabilities Act as amended. Defendant Expert Fire and Safety, LLC (also known as "IMS" or "Industrial Management Safety") extended a job offer to Plaintiff but thereafter withdrew the offer because of Plaintiff's medical condition and because Plaintiff took prescribed medications for her medical condition. Plaintiff filed a charge of disability discrimination with the U.S. Equal Employment Opportunity. After a lengthy investigation, the EEOC issued a determination that Defendant discriminated against Plaintiff in violation of the ADA. Plaintiff has now received a Notice of Right to Sue and files this action for damages.

## Parties

1. Plaintiff Jennifer Mills is an individual residing at 5510 Sunrise Trail, Robstown, Texas, 78380. She may be served with papers in this case through the undersigned counsel.

2. Defendant Expert Fire and Safety/IMS is a limited liability company organized under the laws of the State of Texas. Defendant also refers to itself as "IMS" or "Industrial Management

Safety." Its principal place of business is located at 7602 S. Staples St., Corpus Christi, Texas 78414. It may be served with process through its registered agent, United States Corporation Agents, Inc., at 9900 Spectrum Drive, Austin, Texas 78717.

## Jurisdiction and Venue

3.     The Court possesses subject matter jurisdiction under 28 USC Section 1331 and the Americans with Disabilities Act. The Court possess personal jurisdiction over Defendant because Defendant is incorporated in Texas, because it maintains its principal place of business in Texas, and because Defendant regularly conducts business in Texas. Venue is proper in the Southern District of Texas because all of the events giving rise to Plaintiff's claims occurred within the Corpus Christi Division.

## Statement of Facts

4.     Plaintiff applied for employment with Defendant on or about June 23, 2015 for the position of Fire Watch/Hole Watch. Plaintiff saw the position on Craig's List so she called Defendant and drove to its location in Corpus Christi. When she was there, she was told to get a referral from the Workforce Commission next door. She did so. Plaintiff then filled out the employer's application. The application contained various medical questions that are impermissible under the ADA. Defendant's representatives were too busy to interview Plaintiff that day so Plaintiff was asked to return the following day for an interview. Plaintiff did so and was interviewed. During the interview, Plaintiff was asked some basic questions and was told that they liked her experience. In violation of the ADA, Plaintiff was asked whether she was on any medications. Plaintiff did answer that she takes medications, but she has a prescription for them. Plaintiff asked if this would be a problem and was told "no." Plaintiff was told to stick around for a second interview. Again, she did so, and this second interview occurred on the same

day. During this second interview, Plaintiff was told about the job and asked questions about whether she was fit for the position. Plaintiff was informed that she would be called.

5.  A couple of weeks later (approximately), Plaintiff was called for a third interview. Plaintiff went in for the interview where she was offered the position and given instructions on what she needed to do before starting. For example, Plaintiff was required to go to two safety classes that she had to pay for out of pocket. She was sized for overalls, and was given a paper with instructions on items she had to complete before starting employment. Plaintiff was also required to go for a drug screen, which she did. Plaintiff went for the drug screen on Monday, July 20. At the drug screen, Plaintiff informed the technician that she was taking Adderall for a medical condition, and that she had a prescription for it. The technician said that if there was any problem, the doctor would contact her.

6.  Plaintiff thereafter went to an orientation at the plant, followed by an orientation at the office, where she filled out employment paperwork such as the W-2 and direct deposition. This was on July 23. During this orientation, she advised one of Defendant's owners, Dona, that she was on Adderall. Plaintiff wanted Defendant to know this because she had yet to receive the drug screen results, and Plaintiff wanted Defendant to have a heads up that she might test positive for this reason. Donna told Plaintiff that she would have to talk to Edith to check and see if the results were back and tell her about the Adderall. Plaintiff tried to talk to Edith but was unsuccessful. At this orientation, the workers were told that they would have to go to a final orientation at the plant. On July 27, Plaintiff received a phone call from the medical review officer. He asked Plaintiff if she was taking medication, and Plaintiff said yes, Adderall. The doctor said "okay, that it explains it." He asked Plaintiff to send him a picture of her prescription, that this would clear it

up, and that he would send negative test results to the employer. Plaintiff immediately sent him a photo of the prescription via email.

7. Plaintiff went to the third orientation on the following day, July 28. After she completed this orientation, Ron, who was the recruiter who had conducted the second interview, pulled Plaintiff aside and said that he had just received word from the office that they would not be able to proceed with her anymore because of her medication. Plaintiff replied that she shouldn't be because she talked to the MRO, she has a prescription for her medication, and the MRO said everything would be okay. Ron replied "I don't know; this is coming from the office. Apparently that medication is not okay." Plaintiff asked Ron if he could talk to Dona on her behalf. He said he would and would get back to Plaintiff. Plaintiff then went to her truck and called the office right away. Plaintiff asked to speak with Donna, but she was busy. Then Plaintiff asked to speak with Edith. She was busy too. So Plaintiff called back a short time later, and spoke to Edith. Edith told Plaintiff that she was flagged in their system, and once she was flagged, they cannot proceed with her even though she had a prescription. Plaintiff asked if she could redo the drug test after not taking her medications for a while. Edith stated this could not be done.

8. After her phone conversation with Edith, Plaintiff went back into the plant to speak with plant personnel. Plaintiff met with a plant management employee. Plaintiff told him she was with Defendant and was contracted to work in the plant, and that she was just told she could not work in the plant because she takes Adderall. The man asked Plaintiff some questions about when she took the drug screen, etc. He explained the process and told Plaintiff that the company's policy did not require her exclusion. He advised Plaintiff to call DISA and try to get the flag removed. He wished Plaintiff good luck, and she departed.

9. Plaintiff walked back to her truck where her partner, who had been with her in the orientation, told her that Ron had called Plaintiff's cell phone, and that Ron was very upset. Ron said that "Jennifer had called the office and stirred the pot." As a result, they were not going to go any further with her employment. Plaintiff then called Ron back, and he was rude to Plaintiff. Ron said she should not have called the office. Ron also told Plaintiff not to call the office anymore.

10. After she got off the phone with Ron, Plaintiff called DISA. The representative told her that they had not even sent the employer the drug screen results yet. This confused Plaintiff. She then called DISA again later that afternoon. On the following day, Plaintiff called the employer back (Edith) and asked why she had been disqualified before they even had drug screen results showing she had Adderall in her system. She said once Plaintiff was flagged in the system, they could not go any further. She declined to give Plaintiff any additional information.

11. Plaintiff thereafter timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. After a lengthy and extensive investigation, the EEOC issued a determination that Plaintiff's rights under the ADA had been violated. A copy of the EEOC's Determination is attached hereto as Exhibit 1. Plaintiff has since received her Notice of Rights and timely filed this lawsuit.

### Cause of Action: Disability Discrimination under the ADA (as amended)

12. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 11 supra.

13. Defendant is an employer within the meaning of the ADA. Also within the meaning of the ADA, Plaintiff was an employee or applicant for employment with Defendant.

14. Plaintiff pleads that she suffers a medical condition for which she takes prescription medications. Plaintiff further pleads that her medical condition rendered her disabled within the meaning of the ADA as amended by the Americans with Disabilities Act Amendments Act

(ADAAA). Alternatively, Plaintiff pleads that Defendant regarded her as disabled within the meaning of the ADAAA. Plaintiff was at all relevant times qualified for the position for which she applied and was offered employment. Plaintiff pleads that Defendant fired Plaintiff (or revoked her offer of employment) because of her disability and/or because Defendant regarded Plaintiff as disabled.

15. Defendant also posed impermissible medical questions to Plaintiff during the application process in violation of the ADA and took an adverse employment action against Plaintiff (with no legitimate business justification) because Plaintiff was taking prescribed medications for her medical condition, also in violation of the ADA.

16. As a result of the discrimination visited upon her, Plaintiff has suffered lost wages and benefits, emotional distress, mental anguish, humiliation, and loss of enjoyment of life. Plaintiff now sues for these damages. Additionally, because Defendant acted with malice, or with reckless indifference towards Plaintiff's legally protected rights, Plaintiff is also entitled to an award of punitive damages.

## Jury Demand

17. Plaintiff demands a trial by jury.

## Conclusion and Prayer

18. Plaintiff prays that, upon final judgment, she be awarded the following:

   a. Lost wages and benefits;

   b. Compensatory damages for emotional distress, mental anguish, humiliation, and loss of enjoyment of life;

   c. Exemplary damages;

   d. Attorney fees;

   e. Costs of court;

f. Pre- and post-judgment interest; and

g. All other relief to which she is entitled.

Respectfully submitted,

*[signature]*

Michael V. Galo, Jr.
State Bar No. 00790734
GALO LAW FIRM, P.C.
4230 Gardendale, Bldg. 401
San Antonio, Texas 78229
Telephone: 210.616.9800
Facsimile: 210.616.9898
email: mgalo@galolaw.com
ATTORNEY FOR PLAINTIFF
JENNIFER MILLS